Jesse D. LANGDON and Eureka Vacuum Breaker Corporation, Plaintiffs,

v.

SALTSER & WEINSIER, INC., Defendant,

Sloan Valve Co., Intervener-Defendant.

Civ. No. 12743.

United States District Court
E. D. New York
June 24, 1959.

Harris, Corwin & Post, New York City (Harry H. Harris, New York City, of counsel) and Munn, Liddy, Daniels & March, New York City (Arthur A. March, New York City, of counsel), for plaintiffs.

Watson, Leavenworth, Kelton & Taggart, New York City (Elmer R. Helferich, and Nicholas J. Stathis, New York City, of counsel) and Parker & Carter, Chicago, Ill. (Norman S. Parker, and James G. Staples, Chicago, Ill., of counsel), for defendants.

ZAVATT, District Judge.

Because of the disposition prior to trial of all other claims, the suit in its present posture now embraces only a demand for damages for the alleged infringement of claim 2 of reissue patent No. 21,323 issued to the plaintiff Jesse D. Langdon on January 16, 1940. The original patent was granted on March 23, 1937, and, therefore, the reissue patent expired while this action was pending. The plaintiff Eureka Vacuum Breaker Corporation is the assignee of the reissue patent. The defendant Saltser & Weinsier, Inc. was allegedly a customer of the intervener-defendant Sloan Valve Company and made sales of the accused device which was manufactured and sold by Sloan.

Langdon's patent, as it is here relevant, covers a vacuum breaker for use in conjunction with a toilet flush valve. Such a valve, when operated, permits a metered amount of water to flow into, and flush, a bowl or tank. Certain causes, such as the withdrawal of a large

amount of water from a supply line in connection with the fighting of a fire, can create a vacuum in the supply line which, in the absence of a vacuum breaker, may siphon contaminated water from a bowl beneath a flush valve into a water supply line, which would then itself become contaminated. The mission of a vacuum breaker is to prevent the backflow of contaminated water into the potable water of any system as the result of a vacuum created therein.

Prior to the alleged invention by Langdon the art revealed a number of devices used to permit air to enter a water line to satisfy a vacuum existing therein. Such devices, in providing vents to permit the entry of air, did not, however, at the same time combine a circumfer-

ential air inlet with positive means to prevent water from spilling through such inlet as the result of turbulence created by a column of water falling from the flush valve and flowing or splashing back from the shelf of the bowl below. The structure of the Langdon patent does provide such means, the invention claimed being, "*For use with a combination manual non-siphonic valve, a non-siphonic unit comprising a circumferential air inlet surrounded by an external air inlet tube, including means to allow air to enter around the outlet end of said valve, and positive check valve means to prevent the egress of water through said circumferential inlet.*" The drawings of the patent illustrate the unit separately, and as part of the entire patented structure thus:

*Fig. 1.*

**Fig. 2.**

The novelty of this vacuum breaker lay in its disclosure of the annular flexible member 34, which acted as a positive check valve to prevent the spillage of water through the circumferentially arranged air passages 29 of the unit. The device operates as follows: The tube 32 is a reduced outlet extension for the flush valve, and has a free lower edge at Y. It is surrounded by an air inlet passage defined by an outer sleeve 33 with a reduced lower portion 31. If the flush valve is open at a time when a suction is created in a reverse direction through inlet 3, air is drawn into the vacuum breaker in the direction shown by arrow A, freely passes flexible member 34, and is directed by the downward restriction 31 inwardly around the outlet end of the valve and circumferentially throughout the entire circumference of the outlet 32. Arrow B shows the direction in which air may be drawn by the friction and velocity of water passing downwardly through the outlet. When a flow of water is backed up by the resistance set up within the connections between the toilet bowl and the valve, or otherwise rises into the vacuum breaker, the annular flexible ring 34 acts as a positive check valve, being forced across the circumferential air inlet 29 by internal pressure, the peripheral edge being forced radially outward and upward against the inner circumference of tube 33.

As will be seen, the ultimate disposition of this proceeding rests upon the fact that Sloan's accused device does not infringe the reissue patent. While this is sufficient ground for dismissal of the complaint, it appears to be the "better practice" to deal with the validity of the claim before deciding the issue of infringement, Sinclair & Carroll Co. v. Interchemical Corp., 1945, 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644; Wabash Corp. v. Ross Electric Corp., 2 Cir., 1951, 187 F.2d 577, certiorari de-

nied, 1951, 342 U.S. 820, 72 S.Ct. 38, 96 L.Ed. 620, in order that, where possible, invalid patents be prevented from fencing off public access to the fruits of progress, Alex Lee Wallau, Inc. v. J. W. Landenberger & Co., Inc., D.C.S.D.N.Y. 1954, 121 F.Supp. 555.

We start with the proposition that the reissue patent is presumed valid, and that the burden of establishing invalidity rests with the defendants, 35 U.S.C.A. § 282; Radio Corporation of America v. Radio Engineering Laboratories, Inc., 1934, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163, although here the strength of this presumption is somewhat dissipated by reason of the fact that the prior art relied upon by the defendants was not before the Patent Office when it approved the application. Zoomar, Inc. v. Paillard Products, Inc., 2 Cir., 1958, 258 F.2d 527, certiorari denied, 1958, 358 U.S. 908, 79 S.Ct. 237, 3 L.Ed.2d 230; Fritz W. Glitsch & Sons, Inc. v. Wyatt Metal & Boiler Works, 5 Cir., 1955, 224 F.2d 331. As noted, the prior art reveals the use of vacuum breaker devices for many years prior to Langdon's alleged invention. Such prior art does not anticipate the claim of Langdon however, for nowhere therein is there shown or suggested the use of positive check valve means to prevent the egress of water through the air entry means of the vacuum breaker. Kocour patent No. 2,102,-848 does disclose and claim such check valve, but not in combination with circumferential air entry means. However, since the Kocour patent was granted subsequent to the original patent in suit, albeit on a prior application, it should not, in any event, be viewed as part of the prior art. Sundh Electric Co. v. Interborough Rapid Transit Co., 2 Cir., 1912, 198 F. 94.

The Rulf patent (German No. 235990), upon which the defendants' reliance is principally based, relates to a tank closet operated by a pull chain hanging from its side which opens a valve, permitting water from the tank to flow downwardly through an elongated pipe. The immediate outlet below the tank is a flexible (rubber or leather) feed pipe which projects through a perforated distance piece connected at its ends to the valve and the down pipe. Flowing water presses the flexible feed pipe against the inner wall of the perforated distance piece and the down pipe and closes off the admission of air through the apertures of the distance piece. After the valve has been closed, air flows through the apertures of the distance piece past the flexible feed pipe (which is constricted by the suction of the downwardly dropping water) and causes the water column remaining in the down pipe to fall. With regard to this device, the following is observed. The patent refers to an old fashioned tank closet, and while there was testimony that the device could be used with a modern flush valve and would operate as a vacuum breaker, the patent itself does not disclose or claim such use. The defendants' expert recognized the possibility of a reversal of the flexible member if the device were used in connection with a flush valve, in which event it would be useless as a vacuum breaker. Also significant is that, at a time when the base of the flexible member was constricted, water splashing from a shelf below the outlet pipe could pass through the air openings of the perforated distance piece. Clearly then, the device provided no positive check valve means to prevent the egress of water through the circumferential air inlet thereof.

Upon careful consideration, the court is not satisfied that the differences between the subject matter of the Langdon patent and the prior art were such that the subject matter as a whole would have been obvious at the time the invention was made to one having ordinary skill in the art, for it cannot be said that a skilled artisan, dealing with the prob-

lem solved by the Langdon patent, and having no knowledge of that patent, would have regarded the alleged anticipation as giving him what he wished. See Skelly Oil Co. v. Universal Oil Products Co., 3 Cir., 1927, 31 F.2d 427. Subject to its limitations (without the addition of a flexible valve in the outlet passage of the vacuum breaker, the device would prevent siphonage only under conditions of less than seven inches of vacuum in the supply line), the Langdon device produced a new and useful result which had not been reached by any of the workers in the art prior to that time. As far as it went the device satisfied an old and recognized want. Under such circumstances invention is to be inferred, rather than the exercise of mechanical skill. See Paramount Publix Corp. v. American Tri-Ergon Corp., 1935, 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997; Blaw-Knox Co. v. I. D. Lain Co., 7 Cir., 1956, 230 F.2d 373. The court concludes that Langdon made a patentable invention within the meaning of the statute.

Upon the question of infringement the plaintiffs may not prevail. The accused device is the model V–100–A vacuum breaker manufactured by Sloan, which is diagrammatically illustrated thus:

The device is equipped with a suspended flap valve H, which normally hangs in an intermediate position between the outlet from the flush valve E, and the air inlet of the vacuum breaker X. In the illustration the flap, or gate, is shown in neutral position. Water from the flush valve flows through the outlet E. Circumferential ports B permit air to enter around the entire exterior of the casing D, and to be fed into the inlet X, which is aligned with the water outlet E. The gate valve H controls both the water outlet E and the air inlet X. When the gate is in the position shown, both ports are open. When water flows from the flush valve through the outlet E, it forces the gate into a closed position against the valve seat J, and prevents any splash or escape of water through the vacuum breaker. Any condition of vacuum will cause the gate to swing to and completely close the outlet E, thus preventing any back siphonage of water up through the flush valve, and at the same time admitting air to break the vacuum below the device.

▇▇ To accept the plaintiffs' argument that the Sloan vacuum breaker infringes upon the Langdon patent because it incorporates each of the elements of claim 2 thereof (viz., a circumferential air inlet, an external air inlet tube, means to allow air to enter around the outlet end of the flush valve, and positive check valve means to prevent the egress of water through the circumferential inlet) would be to ignore the principle that " * * * where a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, *but nevertheless falls within the literal words of the claim,* the doctrine of equivalents may be used to restrict the claim and defeat the patentee's action for infringement." Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U. S. 605, 608–609, 70 S.Ct. 854, 856, 94 L. Ed. 1097 (Emphasis supplied). What was said in Boyden Power-Brake Co. v. Westinghouse, 1898, 170 U.S. 537, 568–

569, 18 S.Ct. 707, 722–723, 42 L.Ed. 1136, applies here with equal force:

" ' * * * The argument used to show infringement assumes that every combination of devices in a machine which is used to produce the same effect is necessarily an equivalent for every other combination used for the same purpose. This is a flagrant abuse of the term "equivalent." '

" * * * even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value. To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which produces the same result is to hold, in other language, that he is entitled to patent his function. * * * [An] infringement 'is a copy of the thing described in the specification of the patentee, either without variation, or with such variations as are consistent with its being in substance the same thing. If the invention of the patentee be a machine, it will be infringed by a machine which incorporates in its structure and operation the substance of the invention; that is, by an arrangement of mechanism which performs the same service or produces the same effect in the same way, or substantially the same way. * * * That two machines produce the same effect will not justify the assertion that they are substantially the same, or that the devices used are therefore mere equivalents for those of the other.' "

It is abundantly clear that the mere application of claim phraseology is not enough to establish infringement. Where a device is so far changed in principle that it achieves the same result by a different mode of operation, it is not an

equivalent of the patented structure or an infringement of the claim even though it may fall within the literal words of the claim. Independent Pneumatic Tool Co. v. Chicago Pneumatic Tool Co., 7 Cir., 1952, 194 F.2d 945. To determine infringement the claim must be construed in the light of the specification and the drawings. See Holtzer-Cabot Electric Co. v. Standard Electric Time Co., 1 Cir., 1940, 111 F.2d 71; cf. McClain v. Ortmayer, 1891, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800.

█ Applying these principles to the instant controversy, it must be concluded that while the Langdon structure and the Sloan device have ostensibly the same objective, their operation in no way approaches substantial identity. Nor can it be said that the results obtained with the two devices are substantially the same. The Sloan vacuum breaker will prevent back siphonage under all conditions of vacuum which may exist in a water supply line. The Langdon device, as disclosed in the patent and before modification, was effective only with regard to a vacuum of no more than seven inches. Langdon's device, as shown in the patent specification and drawing, received an extremely limited commercial application before it was modified by the addition of a check valve in the water supply line in an attempt to positively prevent back siphonage. Under such circumstances the court should give the claim only a limited range of equivalents. Richard Irvin & Co. v. Westinghouse Air Brake Co., 2 Cir., 1941, 121 F.2d 429. As stated in Thompson v. Westinghouse Electric Co., 2 Cir., 1940, 116 F.2d 422, 425, " * * * the claim must be read not to discover merely whether it verbally covers what the defendants have done but whether it does when construed in the light of what was actually disclosed." Certainly the structures manufactured and sold by Coyne & Delany Co., the "licensee" of Eureka, were not structures described by the patent in suit, and the plaintiffs are not entitled to fall back upon whatever commercial success may have been enjoyed thereby.

█ When the accused device is tested against the actual disclosure of the Langdon patent the inevitable conclusion is that there is no substantial identity as to means, operation or result, and consequently no infringement. Langdon's invention consisted in the means and apparatus by which a given result was obtained. It cannot be said that a device which obtains the same, together with additional and better, results, through different means, and by a different operation, infringes the Langdon patent, without thoroughly distorting the rule that a patent may not be obtained for a principle, or for an idea, or any other mere abstraction. Cf. Boyden Power-Brake Co. v. Westinghouse, supra.

In the view which I take of this matter I find it unnecessary to pass upon the defendants' contentions that the plaintiffs are estopped by Langdon's reissue oath from asserting the validity of the patent in suit, and that Langdon did not comply with the statutory requirements for obtaining a patent, other than to observe that I am not moved to accept the points made upon the strength of the authorities cited. It is likewise unnecessary to pass upon the standing of Langdon as a proper plaintiff, nor the defense of laches. The foregoing will constitute the court's findings of fact and conclusions of law. Within ten days the parties will settle an appropriate decree dismissing the complaint solely on the ground that the accused device does not infringe the patent in suit, together with such proposed additional findings of fact not inconsistent with this decision as the parties deem necessary.