Jesse D. **LANGDON** and Eureka Vacuum Breaker Corporation, Appellants,

v.

**SALTSER & WEINSIER, INC.,** Appellee, Sloan Valve Company, Intervener-Appellee.

No. 231, Docket 26139.

United States Court of Appeals Second Circuit.

Argued Feb. 8, 1961.

Decided March 14, 1961.

Arthur A. March, March & Curtiss, New York City (Harry H. Harris, Harris, Corwin & Post, New York City, on the brief), for appellants.

Norman S. Parker, Chicago, Ill. (Elmer R. Helferich and Nicholas John Stathis, Watson, Leavenworth, Kelton & Taggart, New York City, on the brief), for appellee, Parker & Carter, Chicago, Ill., Elmer R. Helferich, Nicholas John Stathis, New York City, of counsel.

Before LUMBARD, Chief Judge, MADDEN, Judge, United States Court of Claims,* and WATERMAN, Circuit Judge.

MADDEN, Judge.

This is an appeal from a judgment of the United States District Court for the Eastern District of New York (Zavatt, Judge) holding claim 2 of Langdon reissue patent 21,323 valid but not infringed. 175 F.Supp. 96. Appellants contend that the holding of non-infringement is erroneous. Appellees contend by cross appeal that the patent claim is invalid as anticipated by prior art and as a result of estoppel. Appellees also contend that the accused structure does not infringe; that Sloan, not Langdon, solved the backflow problem; and that Langdon is estopped by laches in bringing suit.

■ The Langdon reissue patent relates to a vacuum breaker or antisiphonic unit for use in conjunction with a flush toilet water valve. The reissue patent drawings, reproduced in the district court opinion, Figures 1 and 2, 175 F.Supp. at pages 98–99, show a vacuum breaker unit attached to the outlet of a manually-operated flush valve. Refer-

ring to said drawings, the reissue patent specification describes the unit as including an adapter nut 28 [1] integral with a suspension spider having circumferential air inlet openings or ports 29 and having an outer rim supporting an air inlet tube 33. The tube 33 tapers to a restricted or waist portion 31 into which valve outlet 32 extends. The member 34 which is positioned between the flush valve outlet 32 and the inner surface of air inlet tube 33 is described as preferably molded of very soft rubber or made of fabric or leather to offer minimum resistance to the passage of air in the direction of the arrow A. When water under pressure is within the unit 35, the water pressure expands the flexible member 34 tightly against the wall of the tube 33, thus preventing water from spilling out through the air ports 29. The reissue patent specification states:

"* * * Thus it will be seen that air can be freely admitted through antisiphonic unit 35 but water cannot be expelled through the passage admitting air. The movement of fluid through the outlet of the flush valve unit will therefore be seen to expand or contract flexible member 34 as the case may be. * * *"

The Rulf patent, German 235,990, issued more than twenty years before the original Langdon application for patent was filed, was not cited by the Patent Office examiner. The Rulf patent discloses a flush toilet valve having an air inlet unit associated with the valve outlet. The flush valve is manually raised by a lever and pull chain in cooperation with a valve seat. The valve seat is connected with a downwardly-extending tube or spider provided with air inlets or ports. A flexible rubber tube extends downward from the valve outlet to conduct water to the lower pipe extending to the usual toilet bowl. The Rulf patent specification discloses that the flexible tube is extended to such an extent that

* Sitting by designation.

1. The numbers refer to the numbers on Figures 1 and 2 appearing in the district court opinion.

it *normally* lies on the downwardly-tapered inner wall of the tube or spider, and that, under the influence of suction in the pipe, the flexible tube assumes a position so that air enters into the unit through air inlets. The Rulf flexible rubber tube, normally in contact with the inner wall of the spider, is the full equivalent of the Langdon rubber member 34 which normally has its outer periphery in contact with the inner wall of inlet tube 33 as illustrated, 175 F.Supp. at page 99.

The early Rulf patent flush valve system utilizes an open water tank from which the water flows by gravity to a toilet bowl at a lower level. This type of flush system is different from a tankless closed system controlled by a timed pressure valve in which the water flows under pressure to the toilet bowl. The problem of preventing backflow from the bowl to the water supply pipe under conditions of vacuum in the water supply pipe is present in tankless systems but is not present in the Rulf patent tank system. However, the Rulf tapered pipe and rubber tube serve to admit air through the inlets into the bowl pipe and serve to prevent water from passing out through the air inlets. Similarly, the Langdon tapered pipe 33 and rubber member 34 serve to admit air through the inlets 29 into the bowl pipe and serve to prevent water from passing out through the air inlets 29. The operation and results achieved by the two units are the same. Both structures prevent the existence of a vacuum in the bowl connection pipe. Both prevent any backflow of water up from the toilet bowl. Claim 2 of the Langdon reissue patent merely defines an old unit. It is clearly invalid for lack of novelty. A person is not entitled to a patent claim if the invention defined was previously patented or described in this or a foreign country. 35 U.S.C. § 102(a).

Claim 2 of the Langdon reissue patent is also invalid for another reason. This reissue patent claim is *identical* to claim 1 of Langdon's original patent 2,074,698 which was granted to him on March 23,

1937. In his reissue application oath, subscribed and sworn to by Langdon on March 7, 1939, Langdon stated as follows concerning patent 2,074,698 and claim 1 thereof:

"* * * that deponent verily believes that the letters patent referred to in the foregoing petition and specification and herewith surrendered are inoperative, for the reason that the specification thereof is defective and insufficient, and that such defects and insufficiencies consist particularly in numerous mistakes in the specification, numerous mistakes in claims and insufficient claims * * *

* * * * * *

"Parts of claim 1 are insufficient and defective because the circumferential air inlet is not defined as being through the spider, and the air inlet must be so provided to make the device workable; further the claim 1 as originally set forth in the patent does not clearly distinguish the elements of invention of the following newly discovered art: * * *"

Notwithstanding Langdon's oath that parts of claim 1 were insufficient and defective and that the claim did not clearly distinguish from the prior art, Langdon neither canceled nor amended claim 1, which is identical to claim 2, the sole claim here in suit. We are of the opinion that such an oath is not to be taken lightly, and that Langdon is estopped to disregard his former contention that the claim in suit does not clearly distinguish over the prior art. Langdon is estopped from relying on the identical patent claim which he swore was defective. Claim 2 is invalid because applicant's oath that it was defective is tantamount to abandonment of the claim. A person is not entitled to a patent claim if he has abandoned the invention defined therein. 35 U.S.C. § 102(c).

■ In view of our conclusion that the patent claim in suit is invalid, it appears unnecessary to give detailed attention to the issues of patent infringement, solution of the backflow problem, and the al-

leged defense of laches. With respect to the infringement question, if the claim in suit be considered amended by the doctrine of file wrapper estoppel [2] to further define the circumferential air inlet as being through the spider, in accordance with the averments of the reissue oath, then the claim so limited would not be infringed by the accused Sloan vacuum breaker. The vacuum breaker art is a crowded art and the present litigation does not require a determination of how or when the backflow problem was solved. With respect to laches, we note that between 1940 and 1950 there was a war period followed by a period during which the patent in suit was involved in litigation. We will not conclude that the delay in bringing the present suit constitutes fatal laches.

For these reasons, the judgment below is affirmed.

2. See, e. g., Waring Products Corp. v. Landers, Frary & Clark, 2 Cir., 1959, 263 F.2d 160, 165.