**M. O. S. CORPORATION, a corporation, Appellant,**

v.

**JOHN I. HAAS CO., Inc., a corporation, Appellee.**

**No. 18953.**

United States Court of Appeals Ninth Circuit.

May 28, 1964.

Rehearing Denied July 7, 1964.

Robert S. Dunham, New York City, Kenneth C. Hawkins, Yakima, Wash., for appellant.

George C. Twohy, Yakima, Wash., Cushman, Darby & Cushman, C. Willard Hayes, Edgar H. Martin, Washington, D. C., for appellee.

Before ORR, HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

This is an appeal from a judgment for the defendant in an action for infringement of a patent covering a process and method of recompressing hops for packing and shipping in standard steel drums.

The patent, (No. 2,674,535) containing nine claims, was obtained on April

13. See, National Labor Relations Act § 9 (a) (1) (A) (ii), as amended, 61 Stat. 143 (1947), 29 U.S.C. § 159 (c) (1) (A) (ii) (1958).

6, 1954, by S. S. Meisler, who, on May 24, 1954 assigned it to the plaintiff and appellant, M. O. S. Corporation (M. O. S.). The claims and specifications of the patent describe a process and method of pressing two standard bales of hops into one circular cross section bale, which is then placed into two standard steel drums for shipping.

In February and March, 1955, defendant and appellee, John I. Haas Co., Inc. (Haas) had hops packed for it in single steel drums. Meisler, with the assent of his assignee, M. O. S., then instructed his patent attorneys to file an application for reissue of the patent, for the purpose of making a change in the specification and adding, as an additional tenth claim, a process and method of compressing "at least one bale" of hops into a bale of circular cross section, for placing into "at least one drum."

This application for reissue was filed on May 18, 1956. It was supported by Meisler's oath which contains a number of recitals including those set out in the margin.[1]

The application was rejected on October 19, 1958. The examiner held that the application was defective because new matter had been introduced into the case. In support of this view the examiner called attention to a place in the specifications wherein the words "one or" had been inserted. The examiner stated that no reference was made in the original specification or claims to the use of one drum for shipping hops. In concluding that, for this reason, the application for reissue was defective, the examiner relied upon the first paragraph of 35 U.S.C. § 251 (1958).[2]

The examiner further held that the application was defective because the added claim enlarges the scope of the claims, and where this is done the application must be applied for within two years from the grant of the original patent. The examiner noted that the application for reissue was filed on May 18, 1956, which was more than two years after the issuance of the patent. In holding that the application for reissue was untimely, the examiner relied upon the last paragraph of section 251.[3]

1. " * * * that I verily believe the original patent to be partly inoperative or invalid for the reason that the original patent describes my invention as a combination of a method of compressing hops with the step of placing a bale into two steel drums, while actually one steel drum can be used in place of two steel drums without affecting the scope of my invention.

"That I claim that my said Letters Patent is so inoperative or invalid by reason of a defective or insufficient specification in that the specification in the short description of the invention does not indicate that the sealing of the bale into two steel drums is an optional procedure.

"Another reason why the specification is defective or insufficient is that it does not contain claim 10, filed herewith, which describes my process of compressing hops without limiting the method of two steel drums.

"As is apparent from the above, the errors which constitute the inadvertence, accident or mistake relied upon in applying for this reissue, consist in that the invention as described and claimed is limited to the use of the two steel drums, while actually one drum can be used as ef-

fectively as two drums. The absence of claims in the issued patent covering the use of one drum is believed to constitute a most serious inadvertence, accident or mistake."

2. The first paragraph of section 251 reads: "Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue."

3. The last paragraph of section 251 reads: "No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent."

Although the first nine claims in the application for reissue were identical with the nine claims of the patent as issued, the examiner rejected all claims "as depending on new matter," but stated that cancellation of the new matter inserted in the specification and of claim 10 would make claims 1 to 9 allowable. The application for reissue became abandoned on April 19, 1959, through failure of the applicant to file an appeal therefrom.

In this infringement suit thereafter commenced, M. O. S. took the position that through application of the doctrine of equivalents, the claims of the patent should be deemed to cover compressing and packing hops in single standard drums, as well as the two standard drums referred to in the claims and specifications.[4]

The use of a single drum, the plaintiff contended, is merely a simple equivalent of the use of two drums since the essential idea of the patent is the recompressing of the bale of hops into a circular form to be placed in a standard drum. The two-drum application, M. O. S. asserted, was therefore merely illustrative and not limiting.

Defendant Haas defended on several grounds, one being that, under the facts, there was no infringement because the doctrine of equivalents does not apply. A second defense was that the patent is invalid. A third defense was that of file wrapper estoppel by reason of representations made in securing the patent. A fourth defense was that the circumstances surrounding the application for reissue, its rejection, and the applicant's failure to take an administrative appeal, call for application of the doctrine of file wrapper estoppel, or collateral estoppel or res judicata, thereby precluding M. O. S. from asserting that the patent covers single-drum packing of hops.[5]

The trial court upheld the fourth defense referred to above, expressing the view that by reason of the statements made in the affidavit filed in support of the application for reissue, and the failure to appeal from the examiner's rejection of that application on the ground that it included new matter, M. O. S. had precluded itself, by file wrapper estoppel, from contending that the claims of the original patent cover single-drum containers.[6]

The gravamen of "file wrapper estoppel," as generally understood, is that an applicant who acquiesces in the rejection of his claim, and accordingly modifies it to secure its allowance, will not subsequently be allowed to expand his claim by interpretation to include the principles originally rejected, or their equivalents. See D & H Electric Co. v. M. Stephens Mfg., Inc., 9 Cir., 233 F.2d 879, 883. See also, 2 Walker on Patents (A. W. Deller ed.) § 249, 1215–1216, 1218.

Here the applicant for reissue of the Meisler patent did not, by reason of the application for reissue, or the statements made in support of that application, or the abandonment of the appeal, gain any right or benefit he did not already have. Thus it cannot be said, as in the ordinary case of file wrapper estoppel, that

---

4. The principle underlying the doctrine of equivalents, as enunciated in the classic statement of Justice Curtis in Winans v. Denmead, 56 U.S. 330, 349, 364, 14 L. Ed. 717, is as follows:

"* * * the patentee, having described his invention, and shown its principles, and claimed it in that form which most perfectly embodies it, is, in contemplation of law, deemed to claim every form in which his invention may be copied, unless he manifests an intention to disclaim some of those forms."

5. In its brief on this appeal Haas suggests an additional defense, based on the doctrine of intervening rights.

6. There are some observations in the oral decision of the district court, which was adopted as the court's findings of fact, which suggest that the court also thought that circumstances in connection with obtaining the original patent gave rise to file wrapper estoppel. But on this appeal the parties have not construed the district court decision as based upon such a ground, and we will therefore assume that there was no decision on that issue.

the patent office granted limited claims in reliance upon a withdrawal of broader claims.

But the district court was apparently of the view that although this normally essential element of file wrapper estoppel was absent from the circumstances surrounding the rejection of the application for reissue, the allegations in the supporting affidavit and the abandonment of the appeal, separately or together, nevertheless work such an estoppel.

In support of this position the district court cited two cases, one being Baker-Cammack Hosiery Mills, Inc. v. Davis Co., 4 Cir., 181 F.2d 550. In the opening sentence of the specification of the Gastrich Patent No. 2,067,486 involved in that case it is stated that the invention relates to full-fashioned hosiery. When the application was pending in the Patent Office the inventor emphasized this fact and pointed out that the processes and machines in the full-fashioned field are so different from those used in the circular knitting art as to leave no room for comparison. The inventor referred to the prior Scott patent and strove to differentiate it on the ground that it pertained to circular knitting and hence did not apply to full-fashioned hosiery.

On these representations the patent in the Baker-Cammack case was granted. Some months thereafter the patentee filed an application for a reissue on the ground that the patent was partly inoperative in that the disclosures and claims had been inadvertently limited to full-fashioned hosiery. The application was rejected by the examiner who was of the opinion that all of the claims of the patent, including those already granted, should be rejected on the prior art. The patentee then withdrew the application for reissue and obtained return of the original patent.

In the infringement suit which followed, the patentee contended that the original claims covered seamless as well as full-fashioned hosiery. Rejecting this argument the court said (at page 563):

"We are of opinion that this course of action on Gastrich's part constituted a complete disclaimer that the invention applies to seamless hosiery. When claims are rejected and withdrawn while an invention is pending in the Patent Office the patentee is estopped to contend that the allowed claim should be given the same breadth and interpretation as the abandoned claims. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 218, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132; Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 136, 62 S.Ct. 513, 86 L.Ed. 736. It is true that claims 1 and 4 of the original patent which was restored to the inventor are not restricted to full-fashioned hosiery. They must, however, be construed in connection with the specification which relates expressly to hosiery of this sort; and any doubt as to whether this limitation should be read into the claims is removed by the assertions of the inventor in his application for reissue. We are of opinion that the defense of non-infringement is made out."

It will thus be seen that in Baker-Cammack, file wrapper estoppel was based on what happened prior to the issuance of the patent. The court made reference to the assertions in the application for reissue only to remove any doubt as to what the inventor was originally claiming in claims 1 and 4, where there was no specific reference to full-fashioned hosiery. We do not regard that case as supporting the proposition that the circumstances surrounding the instant reissue application, considered alone, give rise to file wrapper estoppel or any other kind of estoppel or res judicata.

Smith v. Florence-Mayo Nuway Co., 4 Cir., 182 F.2d 507, cited by Haas on this appeal, seems to us to be much like Baker-Cammack. In Smith, the inventor applied for a patent broadly covering the use of open flame burners in the curing of tobacco. The broad claim was rejected by the Patent Office and the inventor

then accepted the limited claims on which the patent was issued. Thereafter, the patentee sought a reissue containing a broader claim than had been granted. This application was rejected on the prior art, whereupon the application for reissue was abandoned.

In the infringement suit which followed the patentee asked the court to read the limited claims of the patent as including what would have been covered by the claim sought to be added by the reissue application.

Holding against the patentee on this, the court said (at page 509):

"The application for reissue was abandoned after this denial; and the patentee may not ask this court to give to the limited claims granted him an interpretation which would make them as broad as the claims denied in the abandoned application for reissue. See Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 492, 55 S.Ct. 455, 79 L.Ed. 1005; Keystone Driller Co. v. Northwest Engineering Corp., 294 U.S. 42, 46, 55 S.Ct. 262, 79 L.Ed. 747; Smith v. Magic City Kennel Club, 282 U.S. 784, 789, 51 S.Ct. 291, 75 L.Ed. 707. Particularly is this true in view of the fact that the patentee, after the abandonment of the reissue, filed a new application for a patent with broader claims and this was denied by the Patent Office and the denial was approved by the courts."

While the court, in Smith, referred to the broad claims denied in the abandoned application for reissue, the evidence showed that, independent of that application, file wrapper estoppel had already been established. This is made clear in the court's reference to the proceedings to obtain the patent, as follows (at page 508):

"The fact is that, in the proceedings in the patent office, the patentee

sought broad claims of this character and, after they had been denied on the prior art, accepted the limited claims sued on."

Taylor-Reed Corp. v. Mennen Food Products, Inc., 7 Cir., 324 F.2d 108, also cited by Haas, involved a clear case of file wrapper estoppel in connection with the proceedings to obtain the patent. The only reference to a reissue application was in considering a contention that the trial court erred in excluding an abstract of the file wrapper and contents of the abandoned reissue application on the ground that the reissue application was not made by the plaintiff who held the patent by assignment. In holding that there was error in this regard, the court said (at page 112):

"Plaintiff was in privity with the patent title holder. The admissions against interest were made 'on behalf of and as agent for the inventor.' Plaintiff was a subsequent assignee of the remaining interest in the patent. It took the same rights in the patent as held by its assignor. The trial court stated that it would have been admissible against Tip Top. It necessarily follows that plaintiff cannot claim an infringement its assignors were estopped to claim."

Having already decided that there was file wrapper estoppel by reason of proceedings in securing the patent, the question of whether the proceeding relating to the reissue application were admissible in evidence would appear to be of little importance. In any event, the court spoke not only of estoppel, but of "admissions against interest," and we are not sure which the court really meant.[7] We do not regard this decision as persuasive precedent for the view that M. O. S. is estopped by reason of its abandonment of the reissue application following its rejection by the examiner.

7. One of the decisions cited in Taylor-Reed is that of this court in Schnitzer v. California Corrugated Culvert Co., 9 Cir., 140 F.2d 275, 276–277. That we did not base that decision on estoppel is indicated by the following language (at pages 276–277):

The second decision relied upon by the trial court is Langdon v. Saltser & Weinsier, Inc., 2 Cir., 288 F.2d 50. In that case, claim 1 of the original patent related to a vacuum breaker or antisiphonic unit for use in conjunction with a flush toilet water valve. The patentee thereafter applied for a reissue patent, claim 2 of which was identical with claim 1 of the original patent. In his reissue application oath, the patentee expressed the belief that the letters patent theretofore issued were inoperative, for the reason that the specifications thereof were insufficient and defective and that the claim did not clearly distinguish from the prior art. Notwithstanding this concession, the patentee neither cancelled nor amended that claim.

In the infringement suit which followed, the patentee based his rights solely on the claim which he had criticized in his reissue application. Holding against the patentee, the court said (at page 52):

"We are of the opinion that such an oath is not to be taken lightly, and that Langdon is estopped to disregard his former contention that the claim in suit does not clearly distinguish over the prior art. Langdon is estopped from relying on the identical patent claim which he swore was defective. Claim 2 is invalid because applicant's oath that it was defective is tantamount to abandonment of the claim. A person is not entitled to a patent claim if he has abandoned the invention defined therein. 35 U.S.C. § 102 (c)."

It will be observed that in Langdon the question was whether the patentee had, under 35 U.S.C. § 102(c), completely abandoned a claim of the patent, not whether he had estopped himself to assert that the claim through application of the doctrine of equivalency, included matters not expressly stated therein. In our case there is no contention that Meisler's affidavit filed in support of the application for reissue (see note 1), was intended as a complete abandonment, under section 102(c) or otherwise, of the express claims of the patent. This infringement suit does not involve the express claims because Haas is not accused of using a two-drum packing method.

 We hold that the facts pertaining to the application for reissue, its rejection, and the abandonment of the appeal therefrom do not give rise to file wrapper estoppel, collateral estoppel, or res judicata, so as to preclude M. O. S. from asserting that, by application of the doctrine of equivalency, the claims of the patent cover the method of compressing and packing hops in single standard drums.[8]

The judgment is therefore reversed and the cause is remanded for further proceedings.

"While it is the rule in this circuit that admissions made by the applicant to the examiner are not to be used to narrow the scope of his claim unless he has made changes in his application pursuant to the examiner's suggestions, yet the proceedings may be used to aid in construing the claim, Warren Bros. Co. v. Thompson, 9 Cir., 293 F. 745."

8. This is not to say that the proceedings on the application for reissue may not be used in aid of construing the claims. See Schnitzer v. California Corrugated Culvert Co., 9 Cir., 140 F.2d 275, 276-277.