CASTRO CONVERTIBLE CORPORA-
TION, Plaintiff-Appellee,

v.

BEBRY BEDDING CORPORATION,
Defendant-Appellant.

CASTRO CONVERTIBLE CORPORA-
TION, Plaintiff-Appellee,

v.

R. H. MACY & CO., Inc., Defendant-
Appellant.

Nos. 188, 189, Dockets 26209, 26210.

United States Court of Appeals
Second Circuit.

Argued Jan. 10, 1961.

Decided May 24, 1961.

Robert D. Spille, New York City (Curtis, Morris & Safford, John A. Mitchell, Arthur V. Smith, New York City, on the brief), for plaintiff-appellee.

Thomas J. Byrne, Jr., New York City (Keith, Bolger, Isner & Byrne, Paul S. Bolger, Robert E. Isner, New York City, on the brief), for defendant-appellant.

Before CLARK, WATERMAN and MOORE, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Defendants, Bebry Bedding Corporation (Bebry) and R. H. Macy & Co., Inc. (Macy) appeal from a decree and order for injunction and accounting (judgment) wherein the trial court determined that plaintiff, Castro Convertible Corporation (Castro), is the owner of reissued Letters Patent No. 24,128 (reissue application date December 13, 1954; reissued March 13, 1956, replacing original Letters Patent No. 2,664,145 issued December 29, 1953), in the name of Catherine B. Creveling and Elmer L. Pennell (the Creveling patent); that claims 1, 2, 3, 4, 5, 6, 9 and 11, 12, 13 and 14 of Re No. 24,128 are valid and have been infringed by Bebry and Macy; that Letters Patent No. 2,785,416 issued to

Bebry on March 19, 1957 (application filed December 3, 1953) and the claims therein are invalid; that Bebry's counterclaims should be dismissed; that an injunction issue against defendants permanently enjoining them from infringing; and that defendants account to plaintiff for damages resulting from such infringement.

On this appeal appellant argues that the action must be considered as purely one of patent infringement and patent validity. Certain background facts bear upon a proper resolution of these issues presented.

Castro is a retailer of convertible furniture (convertible into beds) which it sells through a chain of 38 retail stores. Bebry since 1936 has been a manufacturer of such furniture. Macy is a large retail department store with branches selling such furniture.

In the summer of 1952, Mrs. Creveling and her co-inventor Mr. Pennell submitted to Castro a model of a hassock or ottoman, which by an unfolding process became a bed. A model offered by them a year earlier to Castro had been rejected. The 1952 model, which the trial court found embodied the invention covered by the Creveling patent, was accepted by Castro.

This model, embodying the Creveling patent principles, Castro submitted to Bebry for manufacture. Bebry, never having seen a folding ottoman bed before, expressed doubt as to its possibilities of success but for an order of 1,000 agreed to manufacture the Creveling ottoman exclusively for Castro. Bebry was informed that the Creveling patent application was pending. About a year later (approximately Fall, 1953), Bebry delivered the production model to Castro which accepted it and soon thereafter placed the ottomans on sale. Some 5,000 were sold by Bebry to Castro in the first full year of manufacture. In December, 1953, shortly after Castro's acceptance of the production model, with-

out Castro's knowledge, Bebry filed a patent application for an ottoman bed. Bebry did not inform his patent attorney who prepared his patent application that he had the Creveling model in his possession. A patent was issued on this application on March 19, 1957.

In the meantime Macy, which had been handling a nonfolding ottoman bed without too much success, became aware of the Creveling ottomans advertised by Castro and tried to buy them from Bebry. Despite the agreement to sell exclusively to Castro, Bebry in January, 1955, commenced selling the ottomans to Macy. On February 8, 1955, these suits for patent infringement, injunction and accounting were brought against Bebry and Macy.

Briefly stated appellants rely upon three fundamental points, (1) the failure of the trial court to apply the proper legal determinants in the resolution of the infringement and validity issues ("the claims measure the invention") ;[1] (2) erroneous application of the principle of equivalence; and (3) invalidity because of prior art.

The facts as found by the trial court were supported by substantial evidence. The court not only heard and saw the witnesses including the experts but made a visual inspection of the ottoman beds and saw motion pictures and still pictures disclosing the methods of operation.

In arguing invalidity defendants rely heavily on prior disclosures shown in the Frank patent No. 1,945,186 issued in January, 1934, for a folding couch or davenport, and the Freedman patent No. 1,265,073 issued in May, 1918, for a bed structure for davenports. The trial court, however, found that these patents were not anticipatory and that there was no evidence that any of them had or could have functioned in actual operation. Significance also may be attached to the fact that there had been no successful commercial development of either the Freedman or Frank principles

1. Milcor Steel Co. v. George A. Fuller Co., 1942, 316 U.S. 143, 62 S.Ct. 969, 86 L.Ed. 1332.

since 1918 and 1934, respectively. Yet when the Creveling-Castro ottoman was marketed in 1954, it achieved immediate commercial success. See Waring Products Corp. v. Landers, Frary & Clark, 2 Cir., 1959, 263 F.2d 160. In addition, from the testimony of a Bebry official came "persuasive evidence that the ottoman was not obvious even to those closely allied with the bed business" (181 F. Supp. 493, 495). Upon the entire record, the trial court was amply justified in concluding that the "Creveling patent is valid."

With regard to the Creveling claims, there is great similarity to the Bebry structure except in the means by which the inner mattress frame is raised or lowered during the folding and unfolding operations. Appellant claims that there are basic structural and operational differences between the Creveling and Bebry mechanisms by which this operation is accomplished. The resolution of these technical and mechanical questions must, of necessity, be within the realm of expert testimony. The trial court found that the testimony of defendants' expert was "unpersuasive" and that the testimony of other key witnesses for defendants on disputed issues of fact was unconvincing. Conversely, the trial court accepted as credible the testimony of plaintiff's expert whom he characterized as highly skilled in the convertible bed furniture art and found that the criss-cross legs used by Bebry, which Bebry urged constituted a different structure and principle of operation, were not new in the art; that they perform substantially the same function in substantially the same way to obtain the same result,[2] and were equivalent to the single toggle lever of the Creveling patent; and that the use of such a mechanism would have been obvious to an ordinary mechanic in the art. These fact conclusions of the trial court were amply supported by the evidence and justify the conclusion of law that the Bebry ottomans infringed upon the Creveling patent.

The finding of equivalency of the Bebry means for raising and lowering the inner mattress frame to the Creveling mechanism also requires the conclusion that the Bebry patent is invalid for lack of invention over the earlier Creveling structure.

The counterclaims of Bebry were properly dismissed.

The judgment (decree, order for injunction and accounting) is affirmed.

CLARK, Circuit Judge (dissenting).

In my view the plaintiff's Creveling patent and the defendant's Bebry patent were both anticipated in all their essentials by the prior art, and both should fall for want of invention.

The Creveling and Bebry patents relate to an article of furniture which can be used either as a bed or as a hassock, and which can be easily converted in a single continuous operation from the one type of furniture into the other. Both patents use three hinge-connected sections of substantially equal size, which are foldable, one over the other, into a rectangular base frame. When so folded, the uppermost section, which constitutes the foot of the bed when the unit is open, becomes the seat of the hassock. The hassock may be opened into a bed by lifting the top section up and forward. This motion draws out the middle section, which is attached to the top section by a hinge or pivot. This movement of the middle section causes the lower section to rise vertically within the base frame to the top of the frame. In this new position the lower section constitutes the head of the bed, the middle section is the middle of the bed, and the top section of the hassock is the foot of the bed. In closing the bed, the top or foot end is lifted upward toward the base frame. This motion causes the middle section to pivot into a position where it may fold into the base frame in a position between the top and bottom sections. As the middle section begins to

---

2. Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097.

fold toward the hassock it causes the bottom section to descend vertically within the hassock.

The only difference between the Creveling and Bebry patents is the manner in which the folding or unfolding movement of the middle section causes the bottom section to descend or ascend within the base frame. In the Creveling patent, the bottom section is supported by toggle links, pivotally connected at the center, and pivoted at the ends to the bottom section and to the bottom of the base frame, respectively. The center of this toggle linkage is connected by a series of levers to the middle section of the bed. As a result, the lifting and unfolding operation of the middle section imparts a straightening action to the toggle links, which in turn lifts the bottom frame. Conversely, the folding of the middle section back into the hassock causes the toggle links to collapse, with the result that the bottom section, supported by those links, descends vertically within the base frame. In the Bebry patent, the bottom section is connected to the base frame by criss-cross legs instead of the single toggle lever of the Creveling patent. As the trial court found, however, the criss-cross legs perform substantially the same operation in substantially the same way as the single toggle lever. When the bed is open, a folding of the middle section toward the base frame causes the criss-cross legs to collapse, with the result that the bottom section, supported by those legs, descends within the base frame. Conversely, a lifting and unfolding of the middle section causes the criss-cross legs to rise and to elevate the bottom section to the top of the base frame. As in the case of the Creveling patent, the motion of the middle section is transmitted to the bottom section and to its supporting mechanism by appropriate intermediate levers.

Thus the two patents are similar; but there is nothing novel in either one of them. Except for the manner in which the bottom section is raised and lowered within the base frame, both patents were fully anticipated by U. S. Patent No. 1,945,186, issued January 30, 1934, to William E. Frank for a "Folding Couch or Davenport." Like the patents involved in the present case, Frank's folding couch used three hinge-connected sections of substantially equal size which were foldable, one over the other, into a base frame, and which opened to form a bed. In all three patents the folded bed is opened by lifting the top section up and forward—a movement which draws out the middle section—and is closed by reversing this process. In the Frank patent, the base frame was a davenport or short couch of the width of the conventional double bed, while the Creveling and Bebry patents use a hassock as a base frame. But a variation in the width of this structure does not involve any element of novelty. The only other difference between them, also of no consequence, is the fact that the Creveling and Bebry patents permit collapsing of the bed with the mattress still attached to the frame, while in the Frank couch the mattress must be removed, to be folded and stored between the middle and bottom sections of the folded couch.

So far as the raising and lowering of the bottom section is concerned, the mechanisms employed to accomplish this by the two patents before us were both present in the prior art. The toggle links used by the Creveling patent were anticipated by U. S. Patent No. 1,265,073, issued May 7, 1918, to Hyman and Nathan M. Freedman for a folding davenport. Similarly, the criss-cross legs used by the Bebry patent appeared in French Patent No. 850,835, issued September 18, 1939, to Jules Devillechabrolle for "Improvements of folding sofa beds and chair beds." The combining of the contributions of these prior inventors does not call for any special ingenuity or skill.

Accordingly both patents before us are invalid for a lack of novelty, irrespective of whether the patented articles of the prior inventors were functionally successful or commercially profitable independently. In their opinion my brothers rely more on the trial judge's assumed find-

ings of fact than is done generally in patent cases; in so doing I think they have overlooked the settled rule that invention is a question of law, usually a serious and important one, to be settled only upon a careful comparison of the claimed new product over the prior art. Here the significant disclosures in the earlier patents cited demonstrate that neither of the present parties really shows any novelty or is entitled to maintain a claim for patent infringement. I would therefore reverse the judgment below.