**WESTERN LIGHTING CORP., a corporation, Appellant,**

v.

**SMOOT–HOLMAN COMPANY, a corporation, Appellee.**

**No. 19793.**

United States Court of Appeals Ninth Circuit.

Nov. 10, 1965.

Rehearing Denied Dec. 23, 1965.

Hamer H. Jamieson, Herzig & Walsh, Los Angeles, Cal., for appellant.

Charles E. Wills, Ford Harris, Jr., Harris, Kiech, Russell & Kern, Los Angeles, Cal., for appellee.

Before CHAMBERS and DUNIWAY, Circuit Judges, and JAMESON, District Judge.

DUNIWAY, Circuit Judge.

This appeal is from an adjudication of contempt. On July 17, 1964 the District Court enjoined appellant:

"* * * from directly or indirectly infringing and from inducing others to infringe any of claims 1, 9, 10 or 12 of United States patent No. 2,932,728, without the consent of or license from the plaintiff SMOOT-HOLMAN COMPANY, and specifically, but without limitation, from making and having made, from using, from selling and having sold, and from shipping and having shipped lighting fixtures as exemplified by Plaintiff's Exhibits 35, 38(a), and 76 through 81."

The injunction was served on Moses, appellant's president, on that day, and he read it. An appeal was taken and a cash supersedeas bond in the sum of $1,500 was filed and approved on July 23. This effectively stayed the injunction. (Rule 62(d), F.R.Civ.P.). On July 27 appellee moved for an order increasing the amount of the bond and this motion was granted on August 7. The pertinent portion of the order reads:

"The writ of perpetual injunction served upon the defendant on July 17, 1964, will be stayed pending the appeal herein, provided that on or before August 13, 1964, the defendant Western Lighting Corp. shall file with the Court, cash or a bond in the amount of Twenty-Five Thousand Dollars ($25,000.00) * * *."

No such bond was posted.

We think it clear that the injunction was stayed through August 13. The order does not expressly revoke the stay effected by the July 23 approval of the

$1,500 bond. The language "will be stayed" cannot fairly be construed as a revocation of the existing stay. Rather, the purpose and effect of the order was to terminate the stay if the increased bond were not filed on or before August 13. It is equally clear, then, that after August 13, the injunction was in effect. Thus the order appealed from cannot stand unless appellant violated the injunction after August 13. The court found that it did, and its finding is fully supported. Stated most favorably to appellee, the following are the facts shown by the record:

■ On May 1, 1964, appellant received a "purchase order" from Valley Wholesale Electric Co. for 81 fixtures of a type described in the injunction. A unit price is entered opposite each type of item. Opposite the words "Shipping Date" appears "Hold for release." A line is drawn through these words. The order also states "Ship Via" "Best," the latter word written in. Also written on the order is "Ship to: Don O'Brian Elect % Madison & Arroyo School—Pomona, Calif". On or after July 24, an employee of appellant wrote on the order "released for delivery 8/26/64 not B4 per Skip 7/24".[1]

A bill of lading dated August 10 was prepared by appellant. Two copies, No. 1, the original and No. 2, a partial carbon, are in evidence. No carrier is designated. The consignee is entered as "Valley." The bill refers to the May 1 order number and has on it the notation "Mark: Madison & Arroyo Schools". No. 1 shows four items, with prices, a total of $2,257.00.[2] No. 2 shows only two items and no prices. Each is separately signed, apparently by the same person,

for the "Shipper" (appellant), and each signature is dated "8/10/64." Nothing written on either is in the same hand as that of the signer. No. 1 bears, opposite the printed words "Delivering Carrier," the handwritten letters "O.T." Admittedly this means appellant's own truck. No such notation appears on No. 2. It can be inferred that the handwritten words and figures that appear on No. 1 but not on No. 2, were written after these papers were first prepared on August 10.

In his affidavit, Moses says that the May 1 order was "filled" on or about that day, that the fixtures were then stored in appellant's warehouse, that title passed to the buyer on May 1, that the bill of lading dated August 10 was appellant's "way of confirming that title had passed," that appellant shipped the order to its warehouse on or about May 1, and that on September 10, and as a favor to Valley, he was asked by Valley to transport the fixtures to the school site, for which appellant made no charge. He further states that the August 10 bill of lading is the only shipping order in appellant's records, was issued on August 10, and completed appellant's "shipping." (The quotes around "shipping" are his.)

Appellant did not invoice Valley for the order until September 10, the price, $2,257, being the same as appears on the No. 1 copy of the August 10 bill of lading. Terms are stated to be "1% 10 days— net 30." None of the documents says anything about passage of title or risk of loss. However, appellant's catalogue states that "deliveries are F.O.B. Los Angeles with full freight allowed." It also states, under "CLAIMS":

"Goods are properly packed for shipping and our responsibility for safe

---

1. To the affidavit of appellant's president Moses, submitted in opposition to the motion, a "Xerox" copy of this order was attached. The unit prices and the foregoing notation were blocked out by covering them with lined paper similar to that of the form itself. However, the paper was so placed as to make it fairly obvious that this had been done.

2. A "Xerox" copy of No. 1 was also attached to Moses' affidavit. The prices

were blocked out, and so was the date. But the blocking out of the prices was much more artfully done. The blocking out of the date was obvious. The prices, both unit and total, are entered in columns headed "weight," "class or rate," and "check column." They are in a different hand from the other entries on the paper, and above the total price appears the word "Invoice."

delivery ceases when goods have been turned over to the transportation company at which time title passes."

On the stand, Moses testified that appellant sends an invoice approximately at the time of sale—"anywheres from the day after to maybe a week, sometimes a little later," but "not necessarily on a hold order." He did not know when "this" invoice was prepared. He asserted that an order to manufacture, similar to the order from the original customer, is written up, that there is such an order for this transaction, but that he did not produce it. There is no one in his concern but himself who can testify that the fixtures were stored in the warehouse, as stated in his affidavit. The warehouse is adjacent to his plant. The statement in his affidavit that "a representative of Valley called me and stated that his truck was tied up and asked if [appellant's truck would transport] their [Valley's] property" was incorrect. He was told by his shipping clerk that Valley called appellant corporation. He admitted that appellant's truck did haul the fixtures to the two schools on September 10.

The court found that appellant "did * * * on or about August 26, 1964, ship certain of the devises [sic] to which the injunction relates as shown by invoices [sic] * * * in the amount of $2,257.00." It ordered appellant to pay appellee "a fine of $500.00 and a further sum of $250.00 as attorney's fees incurred * * * in bringing and prosecuting this proceeding."

We think that, except possibly for the date of August 26, the court's finding is fully supported. It could conclude that there was no "delivery," no passing of title, until at least August 26, the earliest shipping date authorized by Valley, that,

on Moses' own theory, there was a "shipping" on that date, and that in any event there was a "shipping" on September 10. The court was entitled to be most suspicious of Moses' explanations and documents, and to reject the former and give to the latter an effect quite different from what Moses attempted to give them. To say the least, Moses was not candid.[3] The injunction separately and specifically forbids "shipping and having shipped." It was in effect at all times after August 13, and it was violated.

 The only remaining question is as to the validity of the "fine." This is a matter largely within the court's discretion. Yanish v. Barber, 9 Cir., 1956, 232 F.2d 939, 944; Brooks v. United States, 9 Cir., 1941, 119 F.2d 636, 646. The "fine" must bear some relation to, or not exceed, appellee's actual loss. (Yanish v. Barber, supra). In a patent infringement case, the "actual loss" of a plaintiff resulting from sales by an infringer is not readily proved. If the defendant had not made the sale, would the plaintiff have made it? No one can really know. Perhaps that is why the patent statute contains a very liberal provision as to damages (35 U.S.C. § 284). The "fine" is a little more than 20% of the price—not an unreasonable gross margin of profit. We think that the award was proper. We think, too, that a deliberate contempt, such as this, falls within the category of cases in which attorney's fees may be awarded. (Sunbeam Corp. v. Golden Rule Appliance Co., 2 Cir., 1958, 252 F.2d 467; Tobin v. Pielet, 7 Cir., 1951, 186 F.2d 886; cf. 35 U.S.C. § 285).

The order is affirmed. Appellant shall pay to appellee the sum of $500 as attorney's fees for the defense of this appeal.

---

3. When the apparent covering of parts of the papers "copied" and attached to Moses' affidavit was called to the court's attention, appellant's counsel announced that he had told Moses that it was all right to cover the prices, and that he, not Moses, prepared the affidavit. As we have seen, much more than "prices" was covered. And nothing in the affidavit, which describes each attached exhibit as "a copy," tells the court that it is a partial or incomplete or "doctored" copy. Counsel was no more candid in drawing the affidavit than Moses was in swearing to it.